IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00643-RBJ

C5 MEDICAL WERKS, LLC,

    Plaintiff,

v.

CERAMTEC GMBH,

    Defendant.

---

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

---

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction Pursuant to FRCP 12(b)(2). ECF No. 15. The motion argues that this Court lacks personal jurisdiction over the defendant. For the reasons explained below, the motion is denied.

**I.     Factual Background**

The underlying dispute here is about whether the defendant holds a trademark in the color pink in ceramic components for prostheses, and whether plaintiff's products infringe on that trademark. Plaintiff C5 Medical Werks, LLC ("C5") is a Delaware company headquartered in Grand Junction, Colorado. C5 produces ceramic components for medical prostheses. Those components use a ceramic composite called "Cerasurf." According to C5, Cerasurf appears pink because it contains chromium oxide.

Defendant CeramTec GmbH ("CeramTec") is a German company that also produces ceramic prosthetic components. CeramTec's composite, "Biolox Delta," contains chromium

oxide and appears pink. While CeramTec appears to be one of the largest producers of these ceramic components in the U.S. market, the company has no physical presence in Colorado. Its website is, obviously, available worldwide, but it lacks any Colorado-specific content. CeramTec also claims not to "solicit business in Colorado, send agents into Colorado to solicit business, hold itself out as doing business in Colorado, or conduct its business in Colorado." ECF No. 15 at 3.

The dispute between the two companies boils down to the following. Defendant CeramTec had, at one time, a patent on the use of chromium oxide in its ceramic medical implants. Among other attributes, chromium oxide hardens the components. The use of chromium oxide also allegedly imparts a pink hue to the components. After the expiration of CeramTec's patent, other companies, including plaintiff C5, began using chromium oxide. C5 claims that as a result, its ceramic medical components took on a pink hue. In the meantime, CeramTec initiated an application with the U.S. Patent and Trademark Office ("USPTO") seeking to trademark the color pink in its medical devices. C5 views this application as an improper attempt to continue to reap the benefits of a patent on chromium oxide. CeramTec's application explains that the company has been selling its pink product in interstate commerce for more than a decade, and that it had "widely displayed and promoted" its products throughout the United States. Hughes Decl., Ex. F ¶ 2. While the USPTO denied CeramTec's application for listing on the Principal Register, it permitted the company to list its trademark (the color pink) on the Supplemental Register. Such listing gives rise, in part, to CeramTec's attempts to enforce its trademark against C5's use of the color pink.

In late 2013, CeramTec sent a cease and desist letter to C5 in Colorado objecting to C5's continued production of pink ceramic implants. That letter expressed an intent to defend CeramTec's "worldwide" intellectual property rights. C5 also alleges that around the same time CeramTec seized C5's products from a tradeshow in Paris, France. Finally, C5 alleges that CeramTec has participated in three national industry conferences here in Colorado where the defendant promoted its pink products and publicized the fact that it was seeking a trademark on the color and would enforce its trademark against competitors in Colorado. CeramTec disputes this characterization of its actions. It argues that the conferences were not directed at Colorado residents and were designed to be generally educational for industry members rather than a specific opportunity to promote its products. ECF No. 15 at 3-4. CeramTec admits to sponsoring the conferences but denies that it made any effort to enforce its trademark at those events or in any other manner in Colorado besides sending the cease and desist letter.

On March 3, 2014, C5 initiated a lawsuit in this Court asserting three causes of action. The first two seek cancellation of trademarks in the USPTO's Supplemental Register. ECF No. 1 at 21-24. The third cause of action is for a declaratory judgment that C5's own products, although they appear pink and contain chromium oxide, do not infringe on the aforementioned trademarks. *Id.* at 24-26.

On May 6, 2014, CeramTec moved to dismiss C5's complaint on the grounds that this Court lacks personal jurisdiction over CeramTec. A month later, CeramTec filed a complaint in the District Court of Delaware alleging trademark infringement, unfair competition, and deceptive trade practices against C5. The Court discussed these issues with the parties at a scheduling conference on August 12, 2014. Counsel for CeramTec could not promise that it

would serve its complaint in the Delaware case if the instant case were dismissed for lack of jurisdiction, although it did in fact serve the complaint shortly after the scheduling conference. *See* ECF No. 32.

II. **Analysis**

A. **Standard of Review**

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Therefore, the Court need only determine whether exercise of jurisdiction over the defendant comports with due process.

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984). In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 US. 310, 323 (1945). In all, the defendant's contacts with the forum must be such that it is foreseeable that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may be established in two ways. First, general jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Second, specific jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted). In such cases, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted). In general, specific jurisdiction may be had over a nonresident defendant only where that defendant "purposefully directed" its actions at the forum state or "'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (citations omitted). This inquiry "ensure[s] that an out-of state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

The burden of proof is on the plaintiff to establish minimum contacts. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where a challenge to personal jurisdiction is raised early in the litigation, the plaintiff may meet its burden with a prima facie showing based on the pleadings. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The Court accepts as true all well pleaded, non-conclusory facts alleged in the plaintiff's complaint, and all factual disputes are resolved in the plaintiff's favor. *Id.*

B. **Specific Jurisdiction in Trademark Actions Seeking Declaratory Relief**

This motion turns on the question of whether this Court has specific personal jurisdiction over CeramTec.[1] CeramTec's position is that in this context—trademark disputes seeking declaratory relief—its contacts with Colorado are insignificant and do not give rise to the injury complained of by C5. CeramTec further argues that traditional notions of fair play and substantial justice fail to support an exercise of jurisdiction in this case.

1. C5's Injury Arises Out of CeramTec's Purposeful Availment of Colorado.

CeramTec points to an earlier case in which a court in this district found that the sending of a single cease and desist letter was insufficient to justify the exercise of specific personal jurisdiction. In *Fusion Entertainment v. Josh Agle, Inc.*, a defendant possessing a trademark sent a cease and desist letter to the plaintiffs in Colorado. The plaintiffs filed an action for declaratory relief in this Court, and the defendant moved to dismiss for lack of personal jurisdiction. Ruling for the defendant, this Court wrote that

> Plaintiffs also cannot establish personal jurisdiction by the simple fact that Defendant has common law trademark or other intellectual property rights in this state. Courts have held that owning intellectual property rights and sending cease and desist letters into a state in connection with same are not sufficient to establish a basis for personal jurisdiction. Some additional act of purposeful availment is required of the holder of the intellectual property rights.

*Fusion Entm't v. Josh Agle, Inc.*, No. 07CV1651-WYD-KLM, 2008 WL 140489, *5 (D. Colo. Jan. 11, 2008). In that case, the court found that the plaintiffs failed to demonstrate that the

---

[1] In its response to the motion to dismiss, C5 does not argue that the Court has general jurisdiction over CeramTec. Rather C5 requests discovery on the topic of general jurisdiction if the Court deems it necessary to the resolution of Ceramtec's motion to dismiss. Because I find the facts alleged in the complaint and accompanying affidavits sufficient to find personal jurisdiction in this case, such discovery is unnecessary. Furthermore, the motion and associated briefing devoted several pages to the question of whether Fed. R. Civ. P. 4(k)(2) might serve as an alternative basis for jurisdiction. In light of the fact that CeramTec filed and served its related complaint in the Delaware District Court, it appears that Rule 4(k)(2) is not a viable source of personal jurisdiction in this case.

defendant "purposefully availed itself of doing business in Colorado in any manner." *Id.* at *4.[2] CeramTec suggests that "[c]ourts draw a distinction between cease and desist letters that are sent solely to the declaratory judgment plaintiff and communications to third parties that trigger some action that adversely affects the plaintiff." ECF No. 15 at 10 (citing *Dudnikov*, 514 F.3d at 1075-76).

    I agree with this characterization of the law.  The fact remains, however, that in this case CeramTec did more than simply send a cease and desist letter to Colorado.  It also sent agents to Colorado, repeatedly, to promote its products at national conferences.  Its promotion of these products is a justification for its trademark application.  The specific legal dispute in this case springs from C5's desire for the cancellation of CeramTec's existing trademark in the Supplemental Register and a declaration that C5 is not infringing on CeramTec's trademarks. These disputes therefore arise out of the very activities that CeramTec has undertaken in Colorado.  The fact that CeramTec has actively sought to promote its brand and its unique pink color—the precise subject of its disputed trademark—in Colorado on at least three occasions establishes purposeful direction at the forum state.

    CeramTec relies extensively on the Tenth Circuit's holding in *Dudnikov* as establishing that some more concrete form of trademark enforcement inside the forum state is a prerequisite to personal jurisdiction.  In *Dudnikov*, the defendants directed communications at third parties in a non-forum state (California), knowing those third parties would take action causing injury in the forum state (by cancelling the auction in Colorado).  *Dudnikov*, 514 F.3d at 1070.  However,

---

[2] The Court reached this finding despite the fact that Josh Agle the individual—as opposed to the corporate entity named as the defendant—appears to have sold artwork to Denver art galleries and to have personally traveled to Colorado in connection with art sales.  Because the complaint did not name Josh Agle the individual, and because plaintiffs provided no evidence to prove that the individual and the corporate entity were alter egos, these Colorado activities were not considered in the personal jurisdiction analysis.

I see the instant case as an even clearer example of in-forum activity. CeramTec's communications with third parties—communications that appear designed to create trademark rights and to broadcast a willingness to enforce those rights—actually took place in the forum state.[3]

I also note that my decision from *SpaceCo Business Solutions, Inc. v. Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148 (D. Colo. 2013) does not foreclose my conclusions in this order. In *SpaceCo*, the plaintiffs attempted to justify this Court's personal jurisdiction over the defendant on the grounds that the defendant had previously sued the plaintiff in a different state knowing full well that the plaintiff would feel the effects of the suit in Colorado. Such a justification took the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984) to an untenable extreme. I held that such a rationale would mean that a lawsuit in any state would make the plaintiff vulnerable to countersuit in the defendant's home state regardless of the absence of any contacts between the plaintiff and defendant's home forum. Here, however, CeramTec has purposefully directed trademark establishment and enforcement activities at Colorado, and *SpaceCo* is inapplicable.

---

[3] Obviously, in some respects the purposeful availment in *Dudnikov* is different and arguably more direct. That is, the defendant in *Dudnikov* asked the third party in California to shut down the auctions in Colorado. Here, by contrast, communications with third parties were allegedly efforts to promote the use and distinctiveness of the trademark in the national economy. While these are certainly different types of availment, they both appear purposefully directed at the forum and sufficient to establish personal jurisdiction in this Court.

2. Exercising Personal Jurisdiction Over CeramTec Satisfies the Fair Play and Substantial Justice Test.

Finally, the Court finds that exercising personal jurisdiction over CeramTec in this matter comports with "traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080. In reaching that conclusion, I consider

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095.

In the instant case, the burden on CeramTec is minimal given the relatively convenient nature of modern air travel between Germany and Denver. Litigating in Colorado is minimally more burdensome, if at all, than litigating in Delaware, which CeramTec has chosen to do. Moreover, CeramTec is represented by Denver-based counsel. Regarding the second factor, Colorado has an interest in seeing that its companies operate appropriately under existing intellectual property law, and that they comply with all applicable, valid trademarks. C5's interest in convenient and effective relief should be apparent given their location in Grand Junction. To be sure, the company is incorporated in Delaware, but its existence there is a documentary one—neither its officers nor any of its employees are located in Delaware. The interstate judicial system's interest in efficient resolution of controversies would appear to support an exercise of jurisdiction here given that the case was first filed in Colorado and has proceeded through a motion to dismiss and an initial scheduling conference. The fifth factor— the shared interest of the states in furthering fundamental social policies—does not appear to

favor or disfavor an exercise of jurisdiction here.  Nonetheless, an ample majority of the factors indicates that it would be fair to require CeramTec to litigate this matter in the District of Colorado.

### III.     Conclusion

Therefore Ceramtec's motion to dismiss for lack of personal jurisdiction [ECF No. 15] is DENIED.

DATED this 8th day of September, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge